# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN FELIX, | 1:09-cv-02068 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Los Angeles County Superior Court in 1991 of second degree murder with use of a firearm. He is serving a sentence of sixteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its April 25, 2008, decision

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

finding Petitioner unsuitable for parole.  Petitioner contends he was denied his due process rights when the Board of Parole Hearings (Board) failed to support its finding that Petitioner posed a risk of current dangerousness.

      Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Los Angeles County Superior Court on December 19, 2008.  The petition was denied in a reasoned decision on February 25, 2009.  Petitioner next filed a habeas petition in the California Court of Appeal, Second Appellate District, on April 16, 2009.  The appellate court denied the petition on April 23, 2009.  Petitioner then filed a habeas petition in the California Supreme Court on May 19, 2009.  The petition was summarily denied on October 14, 2009.

      Petitioner filed the instant federal petition for writ of habeas corpus on November 25, 2009.  Respondent filed an answer to the petition on June 21, 2010.  Petitioner filed a traverse on August 3, 2010.

**STATEMENT OF FACTS**[2]

      On October 19, 1991, at 1014 N. Marine Ave, Wilmington, a witness was interviewed and related the following.  He had observed a tan Monte Carlo Regal coming north on Marine with a passenger, David Neisinger, sitting in the right side window area.  The passenger was leaning over the top of the car, holding a handgun with both hands and pointed at a group of people on the east side of the street.  At this point, the passenger yelled, "West Side Wilma Locos" and began firing at the group of people.  The car continued south to Opp Street while the passenger climbed back into the front passenger's seat. The car turned right on Opp Street and sped away.

      At 1:00 a.m. on the same date, police officers were on patrol traveling northbound on Friar Street when they heard several gunshots coming from the northeast corner of Marine Avenue and Oak Street. The officers immediately observed a brown Cutlass turn right from southbound Marine Avenue to eastbound Opp Street.  Petitioner and his crime partner were taken into custody. During a crime scene investigation, officers recovered a nine-millimeter automatic

---

[2] This information is derived from the summary of the crime set forth in the Board's decision.

pistol thrown under a parked vehicle located on the north side of Opp Street, west of Marine and east of the alley utilized by Petitioner and his crime partner. This location was approximately where officers first observed the inmate and his crime partner's vehicle fleeing from the scene. The victim, Arnulfo Rodarte, was observed by police lying on the sidewalk with a single gunshot wound to the left side of his chest. There was a large pool of blood on the ground and the victim's shoulders and head. The victim failed to respond to treatment and was pronounced dead.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

1  adjudication of the claim "resulted in a decision that was contrary to, or involved an
2  unreasonable application of, clearly established Federal law, as determined by the Supreme Court
3  of the United States" or "resulted in a decision that was based on an unreasonable determination
4  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
5  § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

6   "[A] federal court may not issue the writ simply because the court concludes in its
7  independent judgment that the relevant state court decision applied clearly established federal
8  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
9  A federal habeas court making the "unreasonable application" inquiry should ask whether the
10 state court's application of clearly established federal law was "objectively unreasonable." Id. at
11 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to
12 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
13 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
14 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
15 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
16 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

17 II.     Review of Petition
18      There is no independent right to parole under the United States Constitution; rather, the
19 right exists and is created by the substantive state law which defines the parole scheme.  Hayward
20 v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482
21 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May
22 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174
23 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).
24 "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state
25 statutes may create liberty interests in parole release that are entitled to protection under the Due
26 Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.
27      In California, the Board of Parole Hearings' determination of whether an inmate is
28 suitable for parole is controlled by the following regulations:

4

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

> Section 2402(d) sets forth the circumstances tending to show suitability which include:

5

    (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

    (2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

    (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

    (4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

    (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

    (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

    (7) Age.  The prisoner's present age reduces the probability of recidivism.

    (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

    (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

    The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

    Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable

or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. State Court Decisions

The superior court provided the last reasoned decision, rejecting Petitioner's claim as follows:

> The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on April 25, 2008. The Petitioner was denied parole for one year. The Board concluded that the Petitioner was unsuitable for parole and would pose an

7

unreasonable risk of danger to society and a threat to public safety.  The Board based its decision on several factors, including his commitment offense, his previous record of violence and his institutional behavior.

The Court finds that there is some evidence to support the Board's finding that the motive was very trivial in relation to the offense. [Citation.] Although the Petitioner's fellow gang member had allegedly been beaten by members of the victim's gang, there was no indication that the victim, nor those in the group the Petitioner's crime partner fired upon were involved. Random gang retaliation is a very trivial motive for firing three shots at a group and murdering the victim.  After a long period of time, a commitment offense may no longer indicate a current risk of danger to society in light of a lengthy period of positive rehabilitation. [Citation.] However, as discussed below the Petitioner's previous gang-related violence, as well as his gang-related violence in prison also indicate a risk of danger. In cases, such as this one, where other factors indicate a lack of rehabilitation, the aggravated circumstances of the offense may provide some evidence of current dangerousness, even decades after it is committed. [Citation.]

The Court also finds that there is some evidence to support the Board's finding that the Petitioner has a previous record of violence. [Citation.] The Petitioner was previously convicted of battery in 1991, resulting from another gang-related fight.  This offense, committed the same year as the commitment offense, demonstrates a pattern of gang-related, violent conduct.

Additionally, the Court finds that there is some evidence to support the Board's finding that the Petitioner's institutional behavior supports a finding of unsuitability. [Citation.] The Petitioner has received five 115 disciplines in prison, including four for violence.  He stabbed inmates on two separate occasions in 1993 and 1995 and was involved in two fights in prison in 1994 and 1995.  Although the Petitioner has not received a discipline for violence for 13 years, his extraordinary level of gang-related violence up to that point indicates a lack of rehabilitation and some evidence of a current risk of danger to society.

The Board also considered a possible gap in the Petitioner's participation in substance abuse programs in 2005, and a statement he made to a prison psychologist that may have indicated that he would react violently if his daughter were harmed.  While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as they are relevant to a determination of whether the Petitioner is suitable for parole. [Citation.]

The Board also considered the Petitioner's post-conviction gains, including his participation in substance abuse, anger management, alternatives to violence, life skills and Bible study programs; his vocations, including one in air conditioning; his solid work reports; his donations to charity; as well as his psychological report's indication that he rates a low risk of future violence.  However, they still concluded that the Petitioner would pose an unreasonable threat to public safety. [Citation.] The Court finds that there is some evidence to support this determination because of the Petitioner's grave history of gang-related violence that continued in prison until 1996.

Accordingly, the petition is denied.

B.      2008 Board Decision

As discussed by the superior court, the Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, his prior criminal record, and his institutional

8

behavior.

The commitment offense involved Petitioner instigating a reprisal against a rival gang for an assault on a fellow gang member. The reprisal involved a drive-by shooting that resulted in the death of the victim. The Board determined the motive for the crime was trivial. Cal. Code Regs., tit. 15, § 2402(c)(1)(E). Although the attack was done as a response to a beating of a fellow gang member, there was no indication that the victim, nor the group fired upon, had any involvement in the attack. As pointed out by the superior court, random gang retaliation using deadly force is a very trivial motive. Therefore, there was some evidence to support the Board's determination that the offense was especially heinous, atrocious or cruel.

The Board also noted Petitioner's prior violent criminal history as an indicator of unsuitability. Cal. Code Regs., tit. 15, § 2402(c)(2). Petitioner had been arrested as a juvenile for burglary. Later, he was convicted of an assault. In light of these offenses, there was some evidence to support the Board's finding.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the Board did not rely only on the commitment offense and prior criminal history.

The Board specifically determined Petitioner posed a current risk of danger to the public based on his violent and criminal institutional behavior. Cal. Code Regs., tit. 15, § 2402(c)(6). Petitioner had sustained five (5) serious rules violations while incarcerated. Although Petitioner had remained incident-free for the past 13 years, his extraordinary level of violent behavior during his early years of incarceration provided some evidence of a current risk of danger. Petitioner had stabbed inmates on two separate occasions in 1993 and 1995. In addition, he was involved in two fights in 1994 and 1995. These incidents provided some evidence of a current risk of danger.

The Board also considered Petitioner's positive factors. His psychological evaluation stated he was a low risk of danger. He was commended for numerous vocations and offers of employment. He had good parole plans and offers of residence. He had been actively participating in many self-help programs. Nevertheless, after considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. The Board determined that the circumstances of Petitioner's commitment offense and prior criminal history, along with his violent institutional behavior, were more probative of a danger to the public should Petitioner be released. The state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **September 2, 2010**                    **/s/ Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE